[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992 the Superior Court, the Honorable Robert D. Krause presiding approved the application of Maurice C. Paradis then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order. William J. McAtee. Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company."
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including without limitation those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)."
R.I.G.L. 8-2-11.1 provides, in pertinent part that:
 "Such administrator/master may be authorized (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties: (3) To require the production before him of books papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath to examine them and to call parties to the proceeding and examine them upon oath."
In accordance with the above, a hearing was held on the above referenced claim on June 25, 1992 and June 27, 1994. At the conclusion of the hearing the parties submitted Post-Hearing Memoranda.
In the instant case claimants originally alleged four accounts at Heritage Loan Investment. Over two years later, and on the last day of the hearings. Claimant presented a claim for a fifth account.
The First Claimed Account is in the name of Ronald Romano, as trustee for Raymond A. Romano and carries account number 01-000264-1. This claim is for $64,384.88 plus accrued interest. This First Claimed Account was allegedly opened at the Pocassett Avenue branch of Heritage.
The Second Claimed Account carries the name of Ronald Romano, as trustee for Pio Romano, Sr. and has the account number 01-001575-3 and this claimers for the amount of $71,123.67 plus accrued interest. Claimant alleges that this account was opened on or about June 30, 1987 with a check in the amount of $50,846.42. This check was deposited into the Heritage account at Fleet Bank on the same date
Claimed Account number. Three is in the amount of $5,152.95 plus accrued interest and is in the name of Romano and Sons Funeral Home and Ronald Romano and is evidenced by Heritage passbook number 01-000501-2. It would appear from the evidence introduced at the hearing that this account is in fact an escrow account to provide for a prepaid funeral for a Jonnie D'Oddio however there is no indication in the title of the account that it is in fact to be held in escrow.
The Fourth Claimed Account is in the amount of $6,057.00 plus accrued interest and carries the number 02-001387-0 on a purported Heritage passbook. This account like Claimed Account. Three above is in the name of Romano and sons funeral Home and again although not reflected in the title appears to be a prepaid funeral account for one Mary Piccirelli. Also introduced in connection with this claim is a check from Piccirelli drawn on Old Stone Bank and cleared through the Heritage Fleet account.
The final Claimed Account is account number Five. Introduced on the last day of the hearings, it represents an "on line" account at Heritage that was closed on December 14, 1990 when RISDIC issued a check in the amount of $6,296.71. This account numbered 02-28-007016-2 was therefore considered closed as of that date.
With the exception of Claimed Account Number Five, all the above Claimed Accounts were not reflected in the computer records of Heritage. These accounts contained only handwritten entries for deposits and withdrawals rather than computer generated entries. Also missing from the Heritage records were with perhaps one exception any deposit and/or withdrawal slips which were regularly required at the institution. The receiver has therefore refused to pay Claimants based on the theory that said accounts were not in the usual course of business at Heritage and were not entitled to priority because they were not deposit accounts.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate investment certificate certificate of indebtedness or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose regardless of the legal relationship thereby established including without being limited to escrow funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association funds deposited by debtor to meet maturing obligations funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit and withheld taxes Provided that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931. 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1). it must be shown that: (1) there is an unpaid balance; (2) of hard earnings: (3) received or held by the bank: (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
Claimant testified that he was unaware that his accounts were not reflected in the usual course of business at Heritage. He maintains that he sought to open traditional passbook accounts and unknown to him he received something entirely different.
Joseph Mollicone. Jr., former president of Heritage, testified at the hearing. He contends that at all times the Claimed accounts, with the exception of Claimed account Number Five were not accounts with Heritage but were rather accounts held by him personally.
The Receiver points to the handwritten nature of the passbooks and asks this Court to conclude that Claimant either knew or should have known that the accounts were not in the usual course of business at Heritage. However absent other evidence this Court has refused to rule that the handwritten entries alone amounted to knowledge of transactions not in the usual course of business of Heritage. This Court refuses to do this now.
After careful consideration of the evidence presented and the testimony of the witnesses, this Court finds that Claimant attempted to open traditional passbook accounts at Heritage. Therefore, Claimant is entitled to priority as to the First, Second, Third and Fourth Claimed Account.
However Claimant is not entitled to priority as to the Fifth Claimed Account. This claim is for an account that was already closed. Claimants own evidence shows a RISDIC check dated December 14, 1990 and therefore the account does not meet the requirement of an unpaid balance referred to in the PhiladelphiaGear case above The actual basis of the claim is that Claimant failed to cash the check before RISDIC itself was placed into receivership not that there is an unpaid balance of an off line account.
Furthermore, this Court is of the opinion that it lacks jurisdiction to hear the matter of an on line account that was closed and is therefore outside of the scope of an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D Krause presiding and referred at the beginning of this decision. It appears that any action that the Claimant may have would be more properly before the RISDIC not the Heritage Receiver
This Court holds that Claimant has priority as to Claims One Two Three and Four and that priority is denied as to Claimed Account Five. Counsel will prepare an order in accordance with this decision.